**IN THE COURT OF APPEALS OF IOWA**

No. 14-1887
Filed October 14, 2015

IN THE MATTER OF THE ESTATE OF
JERROLD WANEK

JAYSEN MCCLEARY,
　　　　Claimant-Appellant,

vs.

DOUGLAS GULLING, Executor of the
Estate of JERROLD WANEK,
　　　　Defendant-Appellee.

_____

　　　　Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


　　　　A probate claimant alleging legal malpractice appeals the grant of

summary judgment to the estate of the deceased attorney.　**AFFIRMED.**


　　　　David J. Hellstern, Louis R. Hockeberg, and Samantha J. Gronewald of

Sullivan & Ward, P.C., West Des Moines, for appellant.

　　　　John W. Wharton and Joseph M. Barron of Peddicord, Wharton, Spencer,

Hook, Barron & Wegman, L.L.P., West Des Moines, for appellee.


　　　　Heard by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Jaysen McCleary brought a claim for legal malpractice in probate against the estate of his bankruptcy attorney Jerrold Wanek. The district court decided McCleary did not timely designate expert witnesses and granted summary judgment in favor of Wanek's estate. McCleary appeals claiming the rule on designating expert witnesses in professional liability actions, Iowa Code section 668.11 (2013), does not apply to this probate matter. He also argues the grant of summary judgment was improper. Because section 668.11 does apply to these proceedings and the record reveals no genuine issues of material fact, we affirm the rulings of the district court.

## I.   Background Facts and Proceedings

Attorney Wanek represented McCleary in federal bankruptcy proceedings until Wanek's death on January 25, 2012. On July 20, 2012, McCleary filed a claim for $166,000 against Wanek's estate contending Wanek breached his fiduciary duty. McCleary alleged Wanek's negligence in allowing the sale of McCleary's interest in a claim against Reliastar Life Insurance Co. in the amount of $100,000 and the loss of tax refunds in the amount of $66,000. The estate denied the claims.

During the federal bankruptcy proceedings, the trustee sold McCleary's interest in the litigation against Reliastar for $2,500.[1] Wanek did not object to the

---

[1] The underlying claim against Reliastar was the subject of separate federal litigation. McCleary's mother had a life insurance policy in the amount of $100,000 with Reliastar. After her death, Reliastar claimed the policy was void and McCleary sued as both an individual and representative of his mother's estate. Wanek did not represent McCleary in this litigation.

sale but following his death, McCleary, serving as his own attorney, filed an objection to the sale.[2] The sale went through over the objection.

On the tax refund claim, McCleary alleged Wanek advised him that he would not be able to retain his tax refunds unless he filed his returns before filing the bankruptcy petition. But the bankruptcy petition was filed first. As a result, the trustee claimed $66,000 in tax refunds as assets. A letter from the trustee to McCleary indicated he would have had to forfeit the refund money even if the tax returns had been filed before the bankruptcy petition.

In September, McCleary filed an amended claim in the amount of $1,953,501.76 plus interest—which was the original amount claimed plus $1,787,501.76 for allowing the sale or release of a claim against Deutsche Bank.[3] McCleary requested a hearing on the amended claim. On March 29, 2013, Wanek's estate filed an answer denying the amended claim. On May 14, 2013, the district court set a trial scheduling conference for May 30, 2013.

McCleary and his counsel failed to appear at the May 30 conference— later claiming problems with the conversion of the case from paper filings to the electronic document management system (EDMS).[4] The court entered another scheduling order on February 14, 2014, setting trial for July 28, 2014. Discovery ensued. Wanek's estate filed a motion to continue, citing McCleary's failure to respond to discovery requests. The court granted the motion on June 27, 2014,

[2] After Wanek's death, McCleary, who is a licensed attorney, represented himself in the bankruptcy action.
[3] McCleary has abandoned this claim on appeal. He now urges only his malpractice claims stemming from the tax returns and the failure to object in the Reliastar matter.
[4] This case was converted to EDMS on May 21, 2013.

and set a new trial date for November 3, 2014. McCleary had not designated expert witnesses. The new trial order stated the time for expert witness designation had closed.

On July 17, 2014, McCleary filed a motion to extend deadlines to designate expert witnesses claiming he had not been given any "legitimate" opportunity to designate an expert and he was currently in the process of retaining an expert. Wanek's estate resisted. On July 31, 2014, McCleary designated two expert witnesses. Wanek's estate moved to strike the designation and also filed a motion for summary judgment that was resisted by McCleary.

Following a hearing, on September 19, 2014, the court ruled on the motion to extend deadlines. The court found McCleary was required to designate experts under Iowa Code section 668.11, "within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure." The court found no good cause to extend the deadline and denied the motion. On October 13, 2014, the court granted the estate's motion for summary judgment.

McCleary now appeals.

## II. Scope and Standards of Review

We review district court rulings concerning witness designation deadlines for an abuse of discretion. *Hantsbarger v. Coffin*, 501 N.W.2d 501, 506 (Iowa 1993).

We review a district court's summary judgment ruling for correction of legal error. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment is appropriate when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *see Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). When reviewing the grant of summary judgment, we view the facts in the light most favorable to the nonmoving party, and give the nonmoving party every legitimate inference that can be reasonably deduced from the record. *Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 774 (Iowa 2013).

## III. Real Party in Interest

We begin by considering whether McCleary is the real party in interest to the legal malpractice claims.[5] *See Lobberecht v. Chendrasekhar*, 744 N.W.2d 104, 108 (Iowa 2008) (holding plaintiff's medical malpractice cause of action had accrued and became property of the bankruptcy estate).[6] In this case, Wanek's estate did not raise a question concerning McCleary's status as the real party in interest in the district court or in the appellate briefing.[7] Accordingly, we find any objection to McCleary as the real party in interest has been waived. *See Frontier*

[5] The concept of real party in interest is distinct from standing to sue. *See Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434–35 (Iowa 2008). Standing requires the plaintiff to show an actual demonstrable injury. *Id.* To be the real party in interest, a plaintiff must be the "true owner of the right sought to be enforced." *Id.*

[6] We note that the automatic stay provision under 11 U.S.C. section 362(a)(3) bars "any act to obtain possession of property of the [bankruptcy] estate, or of property from the [bankruptcy] estate or to exercise control over property of the [bankruptcy] estate."

[7] In fact, when asked about the role of the bankruptcy trustee at oral argument, appellee's counsel did not assert the bankruptcy trustee would be the real party in interest.

*Leasing Corp. v. Waterford Golf Assocs., L.L.C.*, No. 10-0019, 2010 WL 4484390, at *10 (Iowa Ct. App. Nov. 10, 2010) (finding defendant waived "real party in interest" issue); *see also Gagle v. Besser*, 144 N.W. 3, 4 (Iowa 1913).

## IV. Expert Designation under Iowa Code section 668.11

The district court decided that McCleary was a party as provided in section 668.2(1) and that section 668.11 requiring disclosure of expert witnesses applied to his legal malpractice claim filed in the estate of his bankruptcy attorney.

Iowa Code section 668.11 reads, in pertinent part:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
>      a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.
>      b. The defendant within ninety days of plaintiff's certification.
> 2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

On appeal, McCleary advances three arguments against the district court's decision concerning section 668.11. First, he argues the code section does not apply to these proceedings because he is not suing a licensed professional; instead he is suing an estate. Second, he argues he was not given a reasonable opportunity to designate experts because the designation deadline expired before a trial date was set. Third, he argues good cause existed to extend the deadline. We will address each claim in turn.

### A. Claim Filed in Probate

McCleary contends section 668.11 does not apply because he brought suit against Wanek's estate in probate and not against a "licensed professional." He reasons that Wanek's license "was no longer in effect once he died." McCleary cites section 633.444 which governs matters filed in probate court.

The code section reads:

> Within twenty days from the filing of the request for hearing on a claim, the personal representative shall move or plead to said claim in the same manner as though the claim were a petition filed in an ordinary action, and thereafter, all provisions of law and rules of civil procedure applicable to motions, pleadings and the trial of ordinary actions shall apply.

Iowa Code § 633.444. McCleary argues because section 668.11 applies to suits against licensed professionals, it is not an "ordinary action" as referenced in section 633.444. To support this argument, he notes that section 668.11 is included in Title XV Subtitle 5 of the Iowa Code, which is entitled "Special Actions." Without providing authority, he argues special actions are not ordinary.

We disagree with McCleary's position. Our early case law defines an "ordinary action" as "a civil action at law as distinguished from an equitable proceeding." *State v. McGlothlen*, 9 N.W. 893, 893 (Iowa 1881). Iowa Code section 611.2 discusses civil and special actions. Civil actions come in two forms: ordinary and equitable. Iowa Code § 611.3. Code provisions "concerning the prosecution of a civil action apply to both ordinary and equitable proceedings unless the contrary appears, and shall be followed in special actions not otherwise regulated, so far as applicable." *Id.* § 611.13. Special actions depend on the statutes that authorize their pursuit. *See Iowa W. Racing Ass'n v. Iowa*

*Racing & Gaming Comm'n.*, 578 N.W.2d 663, 665 (Iowa 1998). Section 668.11 applies to liability cases against licensed professionals, which are ordinary actions in tort. *See Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 112 (Iowa 2011) (explaining that chapter 668, Iowa's Comparative Fault Act, did not did not create any new causes of action, but rather promulgated a set of rules under which the parties will try all tort actions involving fault). McCleary's claim of legal malpractice filed in the probate proceedings was to be treated in the same manner as an ordinary action under section 633.444. Accordingly, the requirements of designating experts under section 668.11 applied. *See generally Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995) (discussing purpose of expert designation requirement).

### B. Reasonable Time to Designate Experts

Section 668.11 directs the plaintiff to disclose the names of expert witnesses within 180 days of the defendant's answer. McCleary argues because the trial scheduling order in this case did not provide a specific date for designating experts that the default deadline of 210 days applied. He further asserts that deadline expired before the scheduling order was entered.

Wanek's estate first counters that the scheduling order referenced section 668.11 so the 180-day deadline applied, and second contends the setting of a trial date was immaterial to compliance with the statute. We agree with Wanek's estate. Under the statute, McCleary was required to designate any expert witnesses within 180 days of the estate's answer unless good cause was granted by the court.

### C. Good Cause

The purpose of section 668.11 is to establish deadlines in professional liability actions to prevent last minute dismissals. *Cox v. Jones*, 470 N.W.2d 23, 25-26 (Iowa 1991). The statute was also designed to "require a plaintiff to have his or her proof prepared at an early stage in the litigation in order that the professional does not have to spend time, effort and expense in defending a frivolous action." *Hantsbarger*, 501 N.W.2d at 504. In determining if good cause[8] for an extension exists, we consider three factors: (1) the seriousness of the deviation; (2) the prejudice to the estate; and (3) actions of the estate's counsel. *See id.* at 505–06.

In *Donovan v. State*, the supreme court affirmed the district court's denial of an extension to designate experts because it was filed several months after the deadline and counsel failed to answer interrogatories seeking statutorily required information about the expert. 445 N.W.2d 763, 765-66 (Iowa 1989). In *Hantsbarger*, the supreme court found good cause when the plaintiffs "complied with discovery, had their experts in hand, and named them before the statutory deadline." 501 N.W.2d at 505. And the complete designation was only delinquent by about one week. *Id*.

Our case is more analogous to *Donovan* than *Hantsbarger*. One hundred and eighty days from the Wanek estate's answer was September 25, 2013. McCleary responded to interrogatories on April 1, 2014, stating information about his expert was "unknown at this time." Wanek's estate sought information about

---

[8] Because we find section 668.11 applies, we do not address McCleary's arguments on good cause outside of the statute.

the expert in the interrogatories and filed a motion to compel after McCleary provided incomplete responses to the interrogatories. McCleary did not file his designation of expert witnesses until July 31, 2014. Wanek's estate also alleged prejudice from the delay because it would have had inadequate time to prepare in light of McCleary's late filing of his designation of experts.

Given the substantial delay in designating experts even after the request for information from Wanek's estate, we find no abuse of discretion in the district court's decision to strike McCleary's designation of witnesses as untimely.

## V.     Summary Judgment

McCleary argues even if the district court did not abuse its discretion in excluding the late-designated expert witnesses, the grant of summary judgment was still inappropriate. He contends he could establish a prima facie case of legal malpractice even without expert testimony.

A legal malpractice lawsuit requires proof of the following elements:

(1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual injury, loss, or damage.

*Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996).

Wanek's estate does not dispute that Wanek and McCleary had an attorney-client relationship. But it contests the remaining elements. Expert testimony regarding the standard of care is usually required in a legal malpractice action. *Crookham v. Riley*, 584 N.W.2d 258, 266 (Iowa 1998); *but see Kubik*, 540 N.W.2d at 64 ("[E]xpert testimony that an attorney's conduct is negligent is

necessary unless proof is so clear a trial court can rule as a matter of law that the professional failed to meet an applicable standard or the conduct claimed to be negligent is so clear it can be recognized or inferred by a person who is not an attorney.").

McCleary argues he could have created a question for the jury on the breach-of-duty elements without an expert because Wanek's advice was "simply wrong." On the tax refund claim, he asserts Wanek misinformed him that he could carry forward his refund if he filed his tax returns before the bankruptcy petition. But McCleary also acknowledges he did not follow Wanek's advice. Instead, he filed his tax return after he filed the petition. As Wanek's estate argues, McCleary cannot show he suffered a loss caused by Wanek's advice because he did not follow it.

McCleary also argues no expert testimony was necessary to establish that Wanek's failure to object to the trustee's sale of the Reliastar claim fell below the professional standard of care and caused McCleary to suffer damages in a given amount. We agree with the district court's conclusion that the complexity of this matter called for expert testimony. *See Kubik*, 540 N.W.2d at 64 (concluding issues raised by plaintiff were "beyond the common knowledge of laypersons and require[d] expert evidence"). Without expert testimony, McCleary cannot show Wanek breached a duty by not objecting or that harm resulted.

Finally, McCleary contends that because he is a licensed attorney himself he could have served as his own expert witness without designation. He cites *Hansen v. Central Iowa Hosp. Corp.*, 686 N.W.2d 476, 485 (Iowa 2004), where a

treating physician was allowed to testify as to causation because his opinion was not developed in anticipation of litigation, but was not allowed to express opinions on the standard of care.

Like the district court, we do not believe that *Hansen* helps McCleary. As the bankruptcy debtor, McCleary's role was more akin to the patient in *Hansen* than the treating physician. Even though he is a lawyer, McCleary could not testify to the standard of care owed by his bankruptcy attorney or give an opinion that the bankruptcy attorney's breach of duty caused damages, because McCleary was not designated as an "expert."

The district court was correct in finding no genuine issues of material fact supporting McCleary's claim of legal malpractice. Without expert testimony, McCleary could not support his claims of negligence against Wanek. We affirm the district court's grant of summary judgment in favor of Wanek's estate.

**AFFIRMED.**